UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANNY LIU, | No. 2:12-cv-2209-KJM-EFB P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| RICK HILL, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a prison disciplinary conviction that resulted from a rules violation report issued against him in 2010, while he was imprisoned at Salinas Valley State Prison.[1] Petitioner seeks relief on due process grounds, claiming that the evidence was insufficient to support his conviction for constructive possession of a cell phone. Upon careful consideration of the record and the applicable law, it is recommended that petitioner's application for habeas corpus relief be denied.

**I.    Background**

On July 10, 2010, Correctional Officer A. Garibay wrote a rules violations report (RVR) charging petitioner with "Possession of A Cell Phone," in violation of Cal. Code Regs. tit. 15, § 3006(c)(19) (2010). ECF No. 1 at 28. Officer Garibay alleged that:

---

[1] Although the rules violation report was issued at Salinas Valley State Prison, the disciplinary hearing was held at Folsom State Prison.

1

> On 07-08-10, at approximately 1130 hours, while I was assigned as B5 Floor Officer #1, I was conducting a cell search of cell B4-202, occupied by Inmates Liu (V-86065) and Sayasanh (G-29409). During the search I discovered a Samsung Cell Phone and charger underneath the bottom shelf between two pairs of shoes. I then processed the contraband into . . . evidence locker #1 at 1250 hours. Inmates Liu and Sayasanh are both aware of the finding and they were notified that they will be receiving a serious rules violation report.

*Id.*

The disciplinary hearing on the rules violation report was held on August 18, 2010. *Id.* at 29. All reports used as evidence against petitioner, including Officer Garibay's report, were disclosed to him at least 24 hours in advance of the hearing. *Id.* Petitioner appeared at the hearing and stated he was ready to proceed. *Id.* Petitioner met the criteria for the assignment of an investigative employee, and Officer G.E. Noguchi was assigned as the investigative employee. *Id.* Petitioner did not meet the criteria for assignment of a staff assistant, so one was not assigned. *Id.*

At the hearing, the charge against petitioner was read to him. *Id.* Petitioner pled not guilty to the charge, stating: "I did not know anything about the phone." *Id.* The senior hearing officer (SHO) then posed the following questions to petitioner:

Q: Were you assign[ed] to the upper bunk or lower bunk?

A: Lower bunk.

Q: Who was assigned the bottom shelf?

A: Me.

Q: The area underneath the bottom shelf. Is that your area?

A: No it's neutral, we both use it.

*Id.* at 29-30.

Petitioner requested and received permission to call inmate Sayasanh as a witness. *Id.* Because inmate Sayasanh had been transferred to another institution, the SHO contacted the inmate via telephone. Inmate Sayasanh responded to three questions posed by petitioner, via speaker phone:

Q: Did you know about the phone?

A: Yes, it was mine.

1  Q: Did you get a cell search slip?

2  A: Yes.

3  Q: Did I know the phone was there?

4  A: No.

*Id.* at 30. The SHO then posed the following additional questions and comments to Inmate Sayasanh:

Q: The area where the phone was discovered, was that your area? Underneath the bottom shelf . . .

A: Yes.

Q: Your cellmate inmate Liu testified that it was a common area, and it was shared by both you and him.

A: No, the phone was found on my bunk.

Q: The report states that the phone was discovered underneath the bottom shelf, in between a pair of shoes, is that correct?

(SHO notes that inmate Sayasanh had no answer to the question)

Q: How long were you and inmate Liu cellmates?

A: Approximately (2) months.

*Id.*

Petitioner was found guilty of a violation of Cal. Code Regs. tit. 15, § 3006(c)(19) based upon the allegations by Officer Garibay contained in the RVR; the finding that the area in which the phone was found was considered a common area to which both inmates had access; the SHO's determination that inmate Sayasanh's testimony was unreliable; the SHO's finding that, based on the amount of time petitioner and inmate Sayasanh had lived together, it was more likely than not that petitioner had knowledge of the cell phone; and because even though inmate Sayasanh had pled guilty to owning the phone, both inmates were responsible for the contents in the cell and "[o]ne inmate pleading guilty is a common tactic used in to attempt to find the other not guilty." *Id.* at 31. Petitioner was assessed a forfeiture of 30 days of credits. *Id.*

/////

Petitioner subsequently challenged his disciplinary conviction in a petition for writ of habeas corpus filed in the California Superior Court. *Id.* at 37-39. The Superior Court denied the petition, reasoning as follows:

> Petitioner is challenging disciplinary proceedings held with respect to 115 Rules Violation Report ("RVR") log number B10-07-0007, in which he was found guilty of possession of a cell phone. Although the RVR was issued at Salinas Valley State Prison, it appears that the disciplinary hearing was held at Folsom State Prison.
>
> Petitioner specifically contends that the evidence presented was insufficient to demonstrate that he had either knowledge or control over the phone. He notes that the RVR reflects that the phone was found in a pair of shoes and asserts that the only footwear he had in the cell at the time of the search was a pair of shower slippers as his shoes had already been packed in anticipation of his pending transfer. Petitioner also points out that his cellmate accepted responsibility for the contraband.
>
> Along the same lines, Petitioner contends that his witness, his former cellmate, was unable to properly hear and answer the Senior Hearing Officer's (SHO) questions during the hearing, held via teleconference, due to the "slight delay or echo" and the asserted fact that English is not the witness' first language. Accordingly, Petitioner claims that his former cellmate's alleged inability to answer the question about where the phone had been found did not suggest that his claim of ownership lacked credibility.
>
> Inmates may not possess or have under their control or constructive possession any cellular telephones. Former Title 15, Cal. Code of Regs., § 3006(c)(19) (in effect at the time of the RVR at issue here).
>
> The standard for judicial review of a disciplinary finding by a prison hearing officer is whether there is "some evidence" to support the conclusion. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill* (1985) 472 U.S. 445, 455-457. In addition, under the "some evidence" standard, it is not necessary that the evidence logically preclude any conclusion but the one reached by the disciplinary board. *Id.* at 457.
>
> Here, the cellular phone was found directly beneath Petitioner's bunk in a common area of the cell jointly occupied by Petitioner and his cellmate. Almost directly on point is *In re Zepeda* (2006) 141 Cal. App. 4th 1493, in which the search of inmate Zepeda's prison cell yielded three razor blades which were located in a common area accessible to both inmates. Notwithstanding the fact

4

> that Zepeda's cellmate claimed that he was the sole owner of the razor blades, after applying the "extraordinarily deferential" standard of review, the Court of Appeal held that there was "some evidence" to support the finding of guilt against Zepeda. *Id.* at 1498-1500.
>
> Explaining its ruling and application of the *Hill* standard, the court in *Zepeda* held that "[i]mplicit in the 'some evidence' standard of review is the recognition that due process requirements imposed by the federal Constitution do not authorize courts to reverse prison disciplinary actions simply because, in the reviewing court's view, there is a realistic possibility that the prisoner being disciplined is not guilty of the charged infraction." *Id.* at 1498. The court further explained that even though the evidence adduced against Zepeda was "meager" and there was no direct evidence identifying him as the inmate who possessed the razor blades, the fact that the contraband was found in a common area accessible to Zepeda was enough to satisfy the "some evidence standard." *Id*. at 1499. "Zepeda's reliance on the evidence that supports his assertion not to have known about the razor blades, such as his cellmate's acknowledgement of ownership and Zepeda's own claim of innocence, does not change the analysis under *Hill*." *Id*. at 1500.
>
> It is also worth noting that as was the case in *Zepeda,* the SHO in this case also observed that "inmates will often claim ownership of contraband as a means to absolve other inmates of the charge." *Id.* at 1495. *See also In re Johnson* (2009) 176 Cal. App. 4th 290, 300 fn. 6 (hearing officer not bound to believe statement of inmate).
>
> Finally, in light of the holdings of both *Hill* and *Zepeda*, combined with the fact that there was clearly "some evidence" to support the SHO's finding even absent the testimony of Petitioner's former cellmate, Petitioner's challenge to that testimony is irrelevant.
>
> In sum, because there was clearly "some evidence" to support the Senior Hearing Officer's finding that Petitioner possessed the contraband cell phone, the instant petition is without merit and must be denied.

*Id.* at 37-39.

Petitioner subsequently challenged his disciplinary conviction in petitions for a writ of habeas corpus filed in the California Court of Appeal and California Supreme Court. *Id.* at 8-16. Those petitions were summarily denied. *Id.* at 45, 47.

**II.     Analysis**

    **A.     Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28

5

U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]  *Lockyer v.*

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

1    *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002
2    (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that
3    court concludes in its independent judgment that the relevant state-court decision applied clearly
4    established federal law erroneously or incorrectly.  Rather, that application must also be
5    unreasonable."  *Williams*, 529 U.S. at 412; *accord Schriro v. Landrigan*, 550 U.S. 465, 473
6    (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent
7    review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").
8    "A state court's determination that a claim lacks merit precludes federal habeas relief so long as
9    'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v.*
10   *Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).
11   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner
12   must show that the state court's ruling on the claim being presented in federal court was so
13   lacking in justification that there was an error well understood and comprehended in existing law
14   beyond any possibility for fairminded disagreement."  *Richter*,131 S. Ct. at 786-87.

15   If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing
16   court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,
17   527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)
18   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §
19   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering
20   de novo the constitutional issues raised.").

21   In reviewing a federal habeas petition, the federal court looks to the last reasoned state
22   court decision as the basis for the state court judgment.  *Stanley*, 633 F.3d at 859; *Robinson v.*
23   *Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or
24   substantially incorporates the reasoning from a previous state court decision, this court may
25   consider both decisions to ascertain the reasoning of the last decision.  *Edwards v. Lamarque*, 475
26   F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state

---

presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
384 F.3d 628, 638 (9th Cir. 2004)).

court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**B.   Petitioner's Due Process Claim**

Petitioner claims that the SHO violated his Fourteenth Amendment due process rights by finding him "guilty of possession of contraband without any evidence to support his judgment."[3] ECF No. 1 at 3. According to petitioner, there was no evidence, aside from Officer Garibay's

---

[3] To the extent petitioner also claims that his disciplinary conviction does not comport with state regulations or the due process requirements of state law, that claim is not cognizable in federal habeas corpus proceedings. *See Wilson v. Corcoran*, 131 S. Ct. at 16; s*ee also Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009) ("[W]e have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'").

report, that directly connected petitioner to the cell phone. *Id.* He explains that the phone could not have belonged to him because all of his property had already been packed up when the phone was found in his cell. *Id.* at 4-5. He also characterizes the SHO's determination of guilt as merely an "assumption," or a "personal hunch." *Id.* at 4. Petitioner also points out his inmate witness, Sayasanh, does not speak English as a first language and may not have understood all of the questions asked of him. *Id.* at 3. In addition, petitioner notes that there were delays and echoes caused by use of the speakerphone during Sayasanh's testimony, and that Sayasanh may not have heard all of the questions asked of him. *Id.* Petitioner also focuses on Sayasanh's admission that the cell phone was his, and that petitioner did not know about it. *Id.*

Petitioner seeks to have the disciplinary charge "dismissed and cleared from his central file." *Id.* at 6. He asks that his credits be restored because there is no evidence to support the judgment against him. *Id.* He further claims that the SHO "abused [his] discretion" in failing to find petitioner's witness credible and by failing to check petitioner's "Inmate Property Inventory List" to confirm that petitioner's property had already been removed from the cell. *Id.*

It is well established that inmates subjected to disciplinary action are entitled to certain procedural protections under the Due Process Clause but are not entitled to the full panoply of rights afforded to criminal defendants. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). The Ninth Circuit has observed that prison disciplinary proceedings command the least amount of due process along the prosecution continuum. *United States v. Segal*, 549 F.2d 1293, 1296-99 (9th Cir. 1977).

An inmate is entitled to advance written notice of the charge against him as well as a written statement of the evidence relied upon by prison officials and the reasons for any disciplinary action taken. *See Wolff*, 418 U.S. at 563. An inmate also has a right to a hearing at which he may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. *See also Ponte v. Real*, 471 U.S. 491, 495 (1985). The disciplinary hearing must be conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause." *Wolff*, 418 U.S. at 571.

The decision rendered on a disciplinary charge must be supported by "some evidence" in the record. *Hill*, 472 U.S. at 455. A finding of guilt on a prison disciplinary charge cannot be "without support" or "arbitrary." *Id.* at 457. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455-56 and *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)). *See also Burnsworth v. Gunderson*, 179 F.3d 771, 773 (9th Cir. 1990); *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987). Determining whether this standard is satisfied in a particular case does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986), *abrogated in part on other grounds* by *Sandin v. Connor*, 515 U.S. 472 (1995). Indeed, in examining the record, a court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence. *Hill*, 472 U.S. at 455. The question is whether there is any reliable evidence in the record that could support the decision reached. *Toussaint*, 801 F.2d at 1105.

The due process requirement that a disciplinary conviction must be supported by "some evidence" that is "reliable" and not "arbitrary" has been satisfied in this case. Petitioner's conviction was based on: (1) the rules violation report, which reported that a cell phone was found underneath a shelf in the cell shared by petitioner and inmate Sayasanh; (2) the finding that both inmates had "constructive possession" of the phone, because it was found in a common area to which both inmates had access; (3) the SHO's finding that it was "more likely than not" that petitioner had knowledge of the cell phone, given that he and his cellmate had lived together for a "substantial amount of time"; and (4) the SHO's observation that "[o]ne inmate pleading guilty is a common tactic used in to attempt to find the other not guilty." ECF No. 1 at 31. When considered together, this evidence is sufficient to support the decision reached by the disciplinary hearing officers in this case that petitioner was in possession of a cell phone. Even accepting petitioner's argument that the SHO improperly rejected the testimony of inmate Sayasanh, who claimed that the phone was his, that it was found on his bunk, and that petitioner did not know about it, there is clearly "some evidence" to support the determination of guilt. The decision of

the California Superior Court that petitioner's conviction was supported by sufficient evidence, and therefore comported with due process, is not contrary to or an unreasonable application of the federal due process principles set forth above. Accordingly, petitioner is not entitled to federal habeas relief.

### III. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases in the United States District Courts (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: April 9, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

11